IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MICHELE FENGLER, *et al.*,

      Plaintiffs,

      vs.                        Civ. Action No.
                                    5:08-CV-1221 (DNH/DEP)

CROUSE HEALTH FOUNDATION, INC.,
  *et al.*,

      Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFFS: | |
| DOLIN, THOMAS LAW FIRM<br>693 East Avenue<br>Rochester, NY 14607 | J. NELSON THOMAS, ESQ.<br>PATRICK SOLOMON, ESQ.<br>JUSTIN M. CORDELLO, ESQ.<br>MICHAEL J. LINGLE, ESQ.<br>SARA E. ROOK, ESQ. |
| FOR DEFENDANTS: | |
| BOND, SHOENECK & KING, PLLC<br>One Lincoln Center<br>Syracuse, NY 13202 | JOHN GAAL, ESQ.<br>JOSEPH C. DOLE, ESQ.<br>LOUIS ORBACH, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

      The named plaintiffs in this action, each claiming to be a current or

former employee of one of the defendants, have commenced this action asserting a variety of claims including, principally, a cause of action alleging violation of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201 *et seq.*  At the heart of plaintiff's FLSA cause of action is the contention that defendants' meal break deduction policy and the payroll deduction system through which it is implemented, in combination with chronic understaffing immutably requiring hourly employees to work through their meal breaks, results in their not being properly compensated.

In a decision rendered recently I granted plaintiffs' request that the matter be allowed to proceed as a collective action, pursuant to 29 U.S.C. § 216(b), and the parties were tasked with negotiating regarding the text of notices and other materials to be sent to potential plaintiffs advising of the pendency of the suit and their right to opt into the action.  Since then the parties have conferred and submitted to the court a jointly proposed notice, information sheet and mailing envelope, but have been unable to reach agreement concerning the text of the consent form to accompany those documents, with each side submitting competing, proposed language.  In addition, since the issuance of my decision the defendants

have raised issues regarding whether, and if so to what extent, limitations should be placed upon communications between plaintiffs' counsel or others acting at their direction on the one hand, and potential opt-in plaintiffs on the other, during the notice and opt-in period, with plaintiff vigorously opposing any restrictions on the free flow of information to potential opt-in plaintiffs, other than the limitations imposed by ethical considerations.

For the reasons set forth below I find that, with certain exceptions,the notice, envelope, and information sheet forms jointly submitted by the parties are appropriate, and have drafted a consent form which lies somewhere between the two competing proposed forms. Turning to the issue of communications with potential new plaintiffs, I agree that in order to permit potential plaintiffs to make informed decisions as to whether to exercise the right to opt in, without the distraction of undue outside influences, during the notice and opt-in period some restrictions should be placed on unsolicited communications with potential class members by or at the direction of plaintiffs' attorneys.

I.    BACKGROUND

Plaintiffs Michele Fengler and Marianne Meyers, each of whom

claims to be a present or former employee of Crouse Health Hospital, Inc. ("Crouse Hospital"), commenced this action on November 13, 2008. Dkt. No. 1. In their complaint plaintiffs assert five causes of action, alleging statutory claims under the FLSA, the New York Labor Law and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1101 *et seq.*, and additionally setting forth a claim denominated as estoppel. Since commencement of the action, several other individuals claiming to be present or former hourly employees of one or more of the defendants have consented to join in the action as plaintiffs.

On November 18, 2008, plaintiffs moved for certification of the matter as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiffs' motion also sought an order requiring disclosure by defendants of the names and addresses of potential opt-in plaintiffs in order to facilitate the sending of notices to those individuals advising of the pendency of the action and of their eligibility to opt in as plaintiffs. Dkt. No. 46. Following a hearing, I issued a decision on January 26, 2009 granting plaintiffs' request, in part, and permitting the matter to proceed as a collective action with regard to a putative plaintiff group described as follows:

> All present and former hourly employees of Crouse Hospital, including but not limited to registered nurses, licensed practical nurses, and certified nurses' assistants, with direct patient care responsibilities who have been subject to automatic meal break deductions through use of the Kronos System, and who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years.

Dkt. No. 170.  That order also required defendants to provide a list of employees falling within the described category, and directed that the parties confer for the purpose of attempting to agree upon the  contents of a notice to be sent to potential plaintiffs.  *Id.*

In compliance with the court's directive the parties have discussed and agreed upon the form of a notice, information sheet and envelope to be sent to each of the potential plaintiffs listed by the defendants.  *See* Dkt. No. 184.  The parties were unable to reach a consensus, however, regarding the text of the consent form to be also enclosed, and have asked for court intervention to resolve their differences regarding that document.  *See id.; see also* Dkt. No. 187-88.   The parties have additionally requested the court's guidance regarding what, if any, restrictions should be placed upon communications with potential collective action plaintiffs during the sixty day opt-in period specified in my

prior order. Dkt. Nos. 190, 191.

A digitally recorded telephone conference was held on March 4, 2009 to address the parties' disagreements. Based upon the positions stated and arguments raised during that hearing, as well as prior and subsequent briefing received by the court, the matter is now ripe for determination.

II.  DISCUSSION

    A.  Collective Action Notice And Accompanying Documents

        1.  Notice

The FLSA allows for collective actions through an "opt in" procedure as outlined in 29 U.S.C. § 216(b). Contemplating that employees may pursue their claims collectively, section 216(b) provides, in relevant part, that

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of issuing notice in the context of section 216(b) is to provide potentially affected employees the opportunity

"to make informed decisions about whether to participate." *Whalen v. United States*, 85 Fed. Cl. 380 (Ct. of Cl. 2009), *quoting Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170-171, 110 S. Ct. 482 (1989). The trial court is charged with the responsibility of "oversee[ing] the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-LaRoche*, 493 U.S. at 170-71, 110 S. Ct. 482. Determining the form of a court-authorized notice and the specific provisions to be contained within such notice is a matter entrusted to the broad discretion of the trial court. *Sobczak v. AWL Industries, Inc.*, 540 F. Supp.2d 354, 364 (E.D.N.Y. 2007). The Court of Federal Claims recently took the occasion to weigh in on the issue of specific requirements for the content of an FLSA notice of collective action, observing that the notice should 1) adhere to the Supreme Court's standard of judicial impartiality and take care to avoid even the appearance of judicial endorsement of the merits of the action; 2) inform the potential plaintiffs that they may be deposed and required to testify;[1] 3) outline for the potential plaintiffs any arrangement that the representative plaintiffs have with counsel regarding attorney's fees and litigation costs;

---

[1] The notice proposed by the parties in this case does not advise that deposition testimony may be required.

and 4) advise the potential plaintiffs of their right to be represented by an attorney of their choice, and how to participate if they choose to be represented by their own counsel. *Whalen*, 85 Fed. Cl. at 388-89.

Courts addressing the question of appropriate notice contents have reached diverse conclusions; as one court has noted, "[n]o courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain." *Dumitrescu v. Mr. Chow Enterprises, Ltd.*, No. 07 Civ. 3601 (DKL) 2008 WL 2600667 at *6 (S.D.N.Y. June 30, 2008), *quoting Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp.2d 101, 105-06 (S.D.N.Y. 2003). The *Dumitrescu* court and at least two others in New York, however, have seemingly endorsed the notice approved by the court in *Gjurovich,* and found by me to be instructive. *See Laroque v. Domino's Pizza, LLC,* 557 F. Supp.2d 346 (E.D.N.Y. 2008) and *Iriarte v. Redwood Deli and Catering, Inc.*, 2008 WL 2622929 (E.D.N.Y. 2008).

Against the backdrop of these principles, I have reviewed the form notice proposed jointly by the parties. While I generally agree that the notice is appropriate, I will direct certain minor changes. First, reference to the "United States District Court" on the first page should be eliminated

in order to avoid the appearance that the notice is originating from the court.  See Whalen, 85 Fed. Cl. at 388-89; see also Gjurovich, 282 F. Supp. 2d at 109.  In its place, I have opted to substitute the heading "Notice of Lawsuit With Opportunity To Join."  Additionally, I have modified the "do nothing" section of the notice to bring into focus the statute of limitations and its potential impact upon the claims of a plaintiff who decides not to join in the case.  See Gjurovich, 282 F. Supp. 2d at 111.

    I have also added to the notice a background sentence indicating the date on which the lawsuit was filed, and summarizing its essence. See Gjurovich, 282 F. Supp. 2d at 109.  Additional language has further been inserted into the portion of the notice which discusses payment of attorneys' fees, placing the potential opt-in plaintiffs on notice of the fact that while plaintiffs' counsel may be handling the matter on a contingency basis – meaning that if there is no recovery there will be no attorneys' fees owed – they may nonetheless be responsible for their proportional share of any costs associated with the lawsuit other than attorneys' fees.  See Gjurdovich, 282 F. Supp. 2d at 110; Adams v. Inter-Con Security Systems, Inc., 242 F.R.D. 530, 540 (N.D. Cal. 2007).

    2.    <u>Information Sheet</u>

I have reviewed the information sheet agreed upon by the parties, and agree that it is proper in form.

### 3. Cover Envelope

I have reviewed the cover envelope agreed upon by the parties, and similarly concur that it is appropriate in this case.

### 4. Consent Form

There are two areas of disagreement regarding the contents of an appropriate consent form. At the heart of the first is the question of whether, under the terms of my order, consenting plaintiffs are opting into the action for all purposes including the adjudication of any non-FLSA claims, the position espoused by the plaintiffs, or instead only with regard to the FLSA meal break deduction claim, as defendants contend.

While it is true that the opt-in form initially proffered by plaintiffs when moving for permission to have the case treated as a collective action was identical to that now proposed, the clear focus of the memoranda offered in support of their motion was defendants' meal break deduction policy. Moreover, during oral argument I specifically asked plaintiffs' attorneys whether the claims at issue in connection with the

collective action certification motion were broader than the meal deduction policy; in response, counsel stated that they were not, reserving however the right to move for permission to send notice on additional claims at an appropriate time. *See* Transcript of Hearing, held on January 14, 2009 (Dkt. No. 187), at 9-10. In the resulting decision I found, based upon plaintiff's affirmations, that there was "disclose[d] a potential, alleged FSLA [sic] violation at Crouse Hospital resulting from the use of the Kronos system to make automatic meal break deductions for hourly workers. . .." Decision and Order dated January 26, 2009 (Dkt. No. 170) at 24. From this it is clear that my decision was limited to finding plaintiffs had met the requirements for establishing entitlement to issuance of a collective action notice only with respect to the FLSA overtime meal break deduction. I will therefore craft the approved consent form to clarify that the opt-in now being offered is so limited, based upon my prior decision.

The second issue regarding the consent form concerns the proposed grant of authority by opt-in plaintiffs to the named plaintiffs to act on their behalf. Defendants vigorously oppose this delegation. This is an issue which has practical and legal considerations favoring both arguments. On the one hand, in deciding to permit the case to proceed

as a collective action the court has applied a significantly less rigorous standard than that applicable under Rule 23 of the Federal Rules of Civil Procedure to class actions and, accordingly, made no findings regarding, for example, the adequacy of the named plaintiffs to represent other members of the putative class.  On the other hand, casting upon plaintiffs' counsel the requirement of polling a potentially large number of opt-in plaintiffs each time a strategic decision must be made in the case could potentially prove unwieldy.  Having weighed these competing considerations and given the matter careful reflection, I find no compelling reason to reject plaintiffs' proposed language in this regard.  I note, moreover, that several courts have approved of such a delegation of authority, believing it to be consonant with the underlying purpose of the FLSA collective action provisions.  See, e.g. *Iriarte*, 2008 WL 2622929, at * 6; *Whalen*, 85 Fed. Cl. 380 (Appendix A); and, Gjurovich, 282 F.Supp.2d at 107.  To the extent that there are any plaintiffs who are uncomfortable with this delegation, they may choose to retain their own separate counsel, and in that way avoid the delegation requirement.

　　Applying the foregoing principles, I have drafted and attached as Appendices A, B, C and D, respectively, a form notice, information sheet,

envelope, and consent form to be sent by plaintiffs' counsel to potential opt-in plaintiffs in accordance with the court's prior rulings.

      B.     <u>Communications With Opt-In Plaintiffs</u>

Citing the need for court oversight to preserve the integrity of the notice process and insure that the laudable goals underpinning the FLSA are met in this case, and relying heavily upon decision of Magistrate Judge Randolph Treece in *Ruggles v. WellPoint, Inc.,* No. 1:08-CV-201, 591 F. Supp.2d 150 (N.D.N.Y. Nov. 6, 2008), defendants seek a court order precluding certain forms of unsolicited contact and advertisement by plaintiffs' counsel directed toward potential, additional qualifying individuals particularly during the pendency of the opt-in period. Dkt. 190. Plaintiffs initially vigorously opposed any efforts to limit their ability to freely communicate with potential plaintiffs, urging that any such limitation would infringe upon their First Amendment rights, and asserting that if any limitation were deemed necessary it should be carefully circumscribed and issued only after an evidentiary hearing was conducted to determine whether the stringent requirements for such an encroachment upon protected free speech right is warranted. Dkt. 191.

On March 4, 2009, the court conducted a digitally recorded

telephone conference for the purpose of hearing the parties' arguments with respect to, *inter alia*, plaintiffs' direct contact with potential opt-in plaintiffs. At the conclusion of the conference the court granted the parties' requests for additional briefing on this issue. From recent correspondence received by the court, it appears the parties agree that allowing plaintiffs' counsel to have some limited contact with qualifying parties contemplating whether to opt-in during the notice period is appropriate, and indeed potentially beneficial to the process. Dkt. 192-93.

Contrary to plaintiffs' initial assertion, the Supreme Court's decision in *Gulf Oil v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193 (1981), does not stand for the broad proposition that plaintiffs have a constitutionally protected right to contact potential opt-in plaintiffs independent of the court-authorized notice. Rather, in *Gulf Oil* the Court expressly stated that it "[did] not reach the question of what requirements the First Amendment may impose in this context. . . ." *Gulf Oil*, 452 U.S. at 102, n. 15, 101 S. Ct. at 2201, n. 15. The *Gulf Oil* Court held that in the context of the class action suit before it, the trial court's order prohibiting all communications with potential class members "involved serious restraints on expression, . . . [and] . . . [t]his fact, at a minimum, counsels caution on the part of a

district court in drafting such order, and attention to whether restraint is justified by a likelihood of serious abuses." *Gulf Oil*, 452 U.S. at 102, 101 S. Ct. at 2201.

It is well recognized that district courts have a "substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-LaRoche Inc.*, 493 U.S. at 170. Toward this end, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to enter appropriate orders governing the conduct of counsel and the parties." *Id.* at 171 (citing *Gulf Oil*, 425 U.S. at 100, 101 S. Ct. at 2200). Within this framework, I agree that "[f]ailure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant roles in prescribing the terms conditions of communications from the named plaintiffs to the potential [opt-in] plaintiffs . . . ." *Ruggles*, 591 F. Supp.2d 164.

While I am also in agreement with defendants that plaintiffs' direct contact with potential opt-in plaintiffs raises ethical concerns in light of New York Disciplinary Rule 2-103(A), which generally prohibits lawyers from engaging in solicitation, in-person or by telephone, *see* 22 NYCRR § 1200.8, I also recognize plaintiffs' legitimate interest in ensuring that the

court authorized notices are being received by potential collective action members before the sixty-day opt-in period expires.² Weighing these competing concerns, I find that limited communications by plaintiffs with potential collective action members, as directed below, should be permitted during the opt-in period for the limited purpose of ensuring that notice is received. *See Erhardt v. Prudential*, 629 F.2d 843, 846 (2d. Cir. 1980)(holding, in a class action, "[t]o prevent abusive practices in the absence of local rules the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by the parties and their counsel with class members").

III.   SUMMARY AND CONCLUSION

This action, which is in its formative stage, includes an FLSA claim which the court has permitted to be prosecuted as a collective action. The dissemination of information regarding the action to potential plaintiffs is a delicate matter which requires careful oversight on the part of the court, and mandates that I insure neutrality and avoidance of any appearance that the court has formulated any opinion regarding the merits of plaintiffs'

---

² The court's local rules provide that attorney conduct is governed by the New York Code of Professional Responsibility, "as adopted from time to time by the Appellate Division of the State of New York and as interpreted and applied by the United States Court of Appeals for the Second Circuit." N.D.N.Y.L.R. 83.4(j).

FLSA claim. During the sixty-day opt-in period during which potential plaintiffs must decide whether to opt in, the court must also insure against undue influence or distraction to potential plaintiffs in the form of unwanted or unsolicited contacts from either side. Accordingly, the court has prepared notice and consent forms to be utilized in the case, and additionally will place certain restrictions on communications with the potential plaintiffs between now and the end of the sixty-day opt-in period.

Based upon the foregoing, it is hereby

ORDERED as follows:

1) The form notice, information sheet, envelope and consent form appended to this decision (Appendices A, B, C and D) are hereby approved for the sole and exclusive use by plaintiffs' counsel in making unsolicited contacts with potential opt-in plaintiffs utilizing the information to be provided by defendants' counsel, as directed in my prior decision and order.

2) In addition to the foregoing, defendants shall be directed to post the notice (Appendix A) on any job site bulletin boards at Crouse Hospital for a period of at least sixty days preceding the end of the opt-in period.

    3)    Communications with potential opt-in plaintiffs are restricted as follows:

    a)    other than the court-authorized notice neither plaintiffs nor defendants, as well as their respective counsel and/or agents, and/or employees, shall initiate any direct, unsolicited contact with potential opt-in plaintiffs for the purpose of discussing this action;

    b)    Plaintiffs or their agents may communicate with a potential opt-in plaintiff when the communication is initiated by such potential opt-in plaintiff, except that during such communication neither plaintiffs nor their counsel shall actively solicit the potential opt-in plaintiff to join this action, make any statements conflicting with the court-authorized notice, or make misleading statements regarding the status or merits of the litigation;

    c)    in the event that plaintiffs' counsel receives a returned notice resulting from an incorrect or insufficient address or other mail delivery issue, if plaintiffs' counsel desires to attempt direct contact with such potential opt-in plaintiff, counsel shall immediately notify defendants' counsel of the fact of the returned mail as well as the intent to make such direct contact, before the direct contact is attempted, in an effort to reach

agreement regarding the manner in which efforts are to be made to locate the individual.

   d) If such direct contact is attempted by plaintiffs' counsel as authorized in paragraph (c) above, it shall be limited to the purpose of advising the potential opt-in plaintiff of the attempt to provide the court-authorized notice and obtaining information from the potential opt-in plaintiff that will permit plaintiffs to provide such notice. During such communication, neither plaintiffs nor their counsel shall solicit the potential opt-in plaintiff to join this action, make any statements conflicting with the court-authorized, or make any misleading statements regarding the status or merits of the litigation;

   f) Nothing in this decision and order shall prevent any of the parties from otherwise engaging in attorney-client communications in the ordinary course of business.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: March 16, 2009
    Syracuse, NY