UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARIANNE MEYERS;[1] on behalf of herself and
all other employees similarly situated,

                              Plaintiff,

        -v-                                      5:08-CV-1221

CROUSE HEALTH SYSTEM, INC.; CROUSE
HEALTH HOSPITAL, INC.; PAUL KRONENBERG,
MD; JOHN BERGEMANN; CROUSE HOSPITAL
401K RETIREMENT PLAN,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

THOMAS & SOLOMON LLP                  J. NELSON THOMAS, ESQ.
Attorneys for Plaintiff               PATRICK J. SOLOMON, ESQ.
693 East Avenue                       CRISTINA A. BAHR, ESQ.
Rochester, New York 14607             GUY ANTHONY TALIA, ESQ.
                                      JUSTIN M. CORDELLO, ESQ.
                                      MICHAEL J. LINGLE, ESQ.
                                      PETER J. GLENNON, ESQ.
                                      SARA E. ROOK, ESQ.


BOND, SCHOENECK & KING, PLLC          JOHN GAAL, ESQ.
Attorneys for Defendants              JOSEPH C. DOLE, ESQ.
One Lincoln Center                    LOUIS ORBACH, ESQ.
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

---

[1] The Clerk is directed to amend the caption in accordance with this decision. Named plaintiff Michele Fengler was terminated from the action on February 12, 2010.

## MEMORANDUM-DECISION and ORDER

### I. INTRODUCTION

Named plaintiff Marianne Meyers ("Meyers" or "plaintiff") brought this action on behalf of herself and other similarly situated employees against 21 named defendants including Crouse Health Hospital, Inc. and various other inter-related entities[2] and individuals alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219 (2006) ("FLSA"), the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (2006) ("ERISA"), and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190-191 (McKinney 2002).

Defendants move for partial summary judgment dismissing eight opt-in plaintiffs pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes and moves to certify the NYLL and ERISA claims as a class action pursuant to Federal Rule of Civil Procedure 23. Defendants oppose. Both motions were considered on their submissions without oral argument.

### II. BACKGROUND

The parties are presumed to be familiar with the facts underlying plaintiff's claims in light of the number of written opinions already issued. Nevertheless, a brief recitation of the procedural history is helpful for identifying the legal issues relevant to the present motions.

Plaintiff is a former employee of Crouse Hospital. She was employed as a Registered Nurse in the Emergency Department from October 7, 2005, through December

---

[2] Most defendants have since been dismissed. The only remaining defendants are Crouse Health Hospital, Inc. ("defendants" or "Crouse Hospital"); its parent company, Crouse Health System, Inc.; Crouse Hospital President Dr. Paul Kronenberg and Director of Human Resources John Bergemann; and the Crouse Hospital 401(k) Retirement Plan.

24, 2007.[3]  She and now-dismissed named plaintiff Michele Fengler[4] commenced this action

alleging they and other similarly situated employees were required to work through meal

breaks, before and after scheduled shifts, and in excess of forty hours per week, without

compensation.  Specifically, Meyers challenges four of defendants' policies.  First,

defendants automatically deduct 30 minutes each day from an employee's pay for a meal

period using the Kronos computerized system even though employees often miss their meal

period due to patient care demands.[5]  The meal period is deducted for any hourly employee

who works five or more hours in one day.  Crouse Hospital started using the Kronos

timekeeping system in some departments on March 7, 2004, but did not implement the

system hospital-wide until 2005.  Second, defendants pay in tenths of an hour segments, or

six minute intervals, and thus round an employee's time at the beginning and end of each

day.[6]  Third, plaintiff alleges defendants routinely allow and often require employees to work

prior to clocking in and after clocking out.  Fourth, plaintiff claims that defendants fail to

include all remuneration in the regular rate of pay for purposes of calculating the overtime

pay of those employees subject to premium pay for shift differentials.

---

[3] These dates are according to Crouse Hospital records, as provided by Julie Corsoniti, Clinical Supervisor of the Emergency Department.  See Corsoniti Decl., Dkt. No. 310-5, ¶ 7.  However, plaintiff's affirmation, dated September 29, 2008, states that she was employed from October 2003 to April 2007. See Solomon Decl., Ex. I, Dkt. No. 291-1.

[4] Fengler voluntarily withdrew from the instant lawsuit on February 12, 2010.  See Dkt. No. 68.

[5] According to defendants, not all hourly employees use the Kronos system.  For example, individuals employed as temporary instructors at the Hospital's School of Nursing, a part-time position, do not clock in and out using Kronos.  See Bergemann Decl., Dkt. No. 310-1, ¶ 6.  It is unclear how many of the approximately 2,200 to 2,300 hourly employees use the Kronos system.

[6] Defendants' rounding policy is applied differently to "scheduled" and "unscheduled" employees. See Hickein Decl., Dkt. No. 310-6, ¶ 4-11.  Because plaintiff has withdrawn the request for class certification of the rounding claims, there is no need to discuss defendants' rounding policy in detail. Plaintiff also references a 12 minute rounding rule which defendants contend has not been used at Crouse Hospital since 1999.  See Bergemann Decl., ¶ 17.

On January 26, 2009, plaintiff obtained conditional certification of a collective action under the FLSA pursuant to section 216(b).  Magistrate Judge David E. Peebles preliminarily certified the following class:

> All present and former hourly employees of Crouse Hospital, including but not limited to registered nurses, licensed practical nurses, and certified nurses' assistants with direct patient care responsibilities who have been subject to automatic meal break deductions through use of the Kronos system, and who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years.

See Jan. 26, 2009, Decision & Order, Dkt. No. 170, 25-26.  Following the conditional certification, notice was mailed to the 2,129 current and former direct patient care employees eligible to join the FLSA collective action.  The parties also engaged in limited discovery related to plaintiff's instant motion for class certification.  Since that time the parties have litigated the eligibility of certain opt-in plaintiffs.  The parties stipulated to the dismissal of some ineligible plaintiffs while others were excluded as the result of motions to dismiss made by defendants.  At the time of the instant motions, 64 eligible current or former employees have opted-in to the FLSA collective action.[7]

## III. **DISCUSSION**

### A. **Defendants' Motion for Partial Summary Judgment**

Defendants move for partial summary judgment dismissing certain opt-in plaintiffs ("disputed plaintiffs") from this action.  The eight disputed plaintiffs are: Tammy Aiken,

---

[7] In opposition, defendants note that as of the time plaintiff's motion for class certification was made, 70 plaintiffs had opted-in.  See Orbach Decl., Dkt. No. 310-10, ¶ 4.  However, defendants also state that 64 individuals responded to the court-approved interrogatories and reference their then-pending motion to dismiss the 12 opt-in plaintiffs who did not respond to the interrogatories. Id. ¶ 8.  Based on these statements, it appears there were 76 opt-in plaintiffs at the time of the motion; the 64 who responded and the 12 who did not.  Defendants' motion to dismiss those 12 plaintiffs has since been granted, presumably leaving 64 opt-in plaintiffs.

Shirleen Bennett,[8] Kristin Brown, MaryBeth Byrne, Michelle DiMatteo, Karen Gibbs, Kim

Phillips, and Sharlon Simmons.  Since the filing of defendants' motion for partial summary

judgment, opt-in plaintiff Tammy Aiken was dismissed because she left defendants' employ

more than three years prior to opting-in to the lawsuit and thus she fell outside the

conditionally certified class.  See Mar. 26, 2010, Memorandum-Decision & Order, Dkt. No.

285.  The seven remaining disputed plaintiffs opted-in to this collective action pursuant to a

Notice and Consent Form.  By Order dated November 23, 2009, Magistrate Judge Peebles

permitted defendants to direct interrogatories to each opt-in plaintiff to determine what claims

they were asserting.  64 of the 76 opt-in plaintiffs[9] answered the interrogatories.  The

interrogatory at issue posed the following question: "Do you claim to have worked through or

during a meal break without compensation during your employment at the Hospital since

October 30, 2002?"  The disputed plaintiffs each answered "no" to the interrogatory.

Defendants contend the seven plaintiffs at issue do not qualify under the FLSA

certification order because they admitted they did not work through or during a meal break

without compensation.  Plaintiff argues she is entitled to discovery before dismissal because

the alleged violations are technical in nature and depend on documentary evidence yet to be

uncovered.  She further maintains that defendants have not proven they are entitled to

judgment as a matter of law against the disputed plaintiffs on all claims in the complaint.  The

parties also dispute the binding nature of interrogatory responses and the effect that opting-in

to the FLSA collective action has on participating in the remaining claims in this action.

---

[8] In response to defendants' statement of material facts, plaintiff's counsel indicated that disputed plaintiff Shirleen Bennett would file a voluntary opt-out notice.  As of the date of this motion, no such notice has been received and thus Shirleen Bennett is still a plaintiff in this lawsuit.

[9] See supra, note 7.

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Id.  Then the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id.

The Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions but several district courts have determined they are.  See, e.g., Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC, No. 05 Civ. 8665, 2008 WL 4449412, at *11 (S.D.N.Y. Sept. 30, 2008) ("[I]n this Circuit, contention interrogatories are treated as judicial admissions 'that generally stop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses.'") (quoting Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999)); see also Zeigler v. Marriott Int'l, Inc., No. 03 Civ. 7688, 2005 WL 1022431, at *11 (S.D.N.Y. May 2, 2005) (plaintiff's complaint and interrogatory responses "constitute admissions and limit his potential claims"); Guadagno v. Wallack Ader Levithan Assocs., 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) (observing that interrogatory responses are generally treated as judicial admissions, and that "[a] judicial admission is conclusive, unless a court allows it to be withdrawn"), aff'd 125 F.3d 844 (2d Cir. 1997) (unpublished table decision).

This issue was recently addressed in the Western District of New York.  See Grace v. U.S., --- F.Supp.2d ---, No. 08-CV-6006, 2010 WL 4451818, at *11 (W.D.N.Y. Nov. 4, 2010).  In Grace, the United States attempted to bar a plaintiff from pursuing a claim based on his original interrogatory response.  Id.  The court reviewed the Advisory Committee's

notes to Federal Rule of Civil Procedure 33 governing interrogatories.   The notes indicated that interrogatories generally do not limit proof, however in cases where reliance on an answer may cause prejudice, a court may find the answer binding.  The <u>Grace</u> Court determined that the plaintiff was not bound by his original interrogatory answer because his response was conditional,[10] he amended his response two months later, and the United States learned about his more expansive theory of liability during a deposition one month after the interrogatory response.  Based on these facts the court determined the United States was not prejudiced.

<u>Grace</u> is distinguishable from the instant matter.  Here, plaintiff alleges defendants violated the FLSA and the NYLL by implementing four different policies.  Defendants served disputed plaintiffs with interrogatories to determine which policy each opt-in plaintiff is proceeding under.  This is the type of general information that defendants need to adequately defend themselves and must rely on such information to craft motions and a defense strategy.  Defendants would be prejudiced if responding opt-in plaintiffs were permitted to change their responses as the case proceeds.  It should also be noted that both parties relied on responding plaintiffs' interrogatories in dismissing many opt-in plaintiffs who did not meet the class definition because of their dates of employment, job duties, or pay category.

The class was certified as direct patient care workers "who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years."  Based on the disputed plaintiffs' answers, under penalty of perjury, none

---

[10] He stated "*[a]t present time*, the only natural person plaintiff knows . . . ."

asserted that they have or may have worked during a meal break without pay and therefore they fall outside the conditionally certified class and must be dismissed.  See Mar. 26, 2010, Memorandum-Decision & Order, Dkt. No. 285, 4 (dismissing plaintiffs who necessarily fall outside conditionally certified class because they did not work for defendants within the past three years as required by putative class definition).  Concerning plaintiff's contention that more discovery is needed, whether plaintiffs worked during a meal break without pay is well-within their knowledge and not something to be determined by conducting discovery.

With respect to plaintiff's argument that the disputed plaintiffs may allege violations other than the meal break claim and therefore cannot be dismissed, this issue has already been decided.  See May 27, 2009, Memorandum-Decision & Order, Dkt. No. 210. Individuals who opt-in to the FLSA collective action do not just opt-in as to a claim, but instead opt-in to the action in its entirety and may seek damages for all claims asserted in the complaint, not just the meal break claim.  Id. at 9.  This eliminates the need for an opt-in plaintiff to opt-in again at a later date should additional claims be added.  Id.  This remains one lawsuit and plaintiffs may assert violations of all, none, or a combination of defendants' alleged unlawful policies.

However, an opt-in plaintiff to the FLSA collective action must still meet the requirements to opt-in.  While an opt-in plaintiff to the FLSA collective action becomes a part of the lawsuit in its entirety and may assert additional claims, the opposite is not necessarily true.  Simply stated, one is who ineligible to opt-in to the FLSA collective action may nevertheless still be eligible to be a part of the lawsuit.  Indeed, there may be an infinite number of individuals who were not eligible to opt-in under the Notice and Consent Form because they did not have direct patient care responsibilities.  Some of those same

individuals however may be able to proceed in a class action if such classes are not limited to employees with direct patient care responsibilities.  Likewise, the preliminarily certified FLSA class is limited to people employed within the last three years, based on the FLSA's three year statute of limitations, while a class action could potentially include people employed within the previous six years, based on the NYLL's six year statute of limitations.

In attempting to show defendants are not entitled to judgment as a matter of law plaintiff has submitted payroll records of numerous employees to raise issues of fact.  Such documents relate to violations other than the meal break claim.  For the reasons discussed above, those issues are not relevant to the disputed plaintiffs' inclusion in the FLSA class conditionally certified on January 26, 2009.  Plaintiff also contends that summary judgment is inappropriate pursuant to Rule 56(f) because facts essential to justify plaintiff's opposition are yet to be obtained.  In support of this argument plaintiff's counsel filed an affirmation indicating that discovery is needed as to other violations, including whether hourly pay was impermissibly rounded and whether shift differentials were properly applied.  This may very well be true, but the instant motion for partial summary judgment is only to dismiss the disputed plaintiffs from the FLSA collective action.  That class was preliminarily certified only as to the meal break claims of a limited class – those hourly employees with direct patient care responsibilities subject to the automatic meal break deduction policy who claimed to have worked during a meal period without compensation during the prior three years.

Accordingly, defendants' motion for partial summary judgment will be granted and the following opt-in plaintiffs will be dismissed from the conditionally certified FLSA collective action: Shirleen Bennett, Kristin Brown, MaryBeth Byrne, Michelle DiMatteo, Karen Gibbs, Kim Phillips, and Sharlon Simmons.

### B.  Plaintiff's Motion for Class Certification

Plaintiff moves pursuant to Federal Rule of Civil Procedure 23 for class certification of the NYLL and ERISA claims and the appointment of Thomas & Solomon LLP as class counsel.  Plaintiff's proposed class includes all current and former hourly employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  Plaintiff proposes four subclasses.

### 1.  Legal Standard

The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of the Rule 23 requirements have been met. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008).  Rule 23 should be given "liberal rather than restrictive construction" and courts should "adopt a standard of flexibility."  Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (quoting Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)).  Trial courts are given substantial discretion in determining whether to grant class certification.  See e.g., Sumitomo Copper Litig.v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001). Doubts about whether Rule 23 has been satisfied should be resolved in favor of certification. Barrus v. Dick's Sporting Goods, Inc., --- F.Supp.2d ----, No. 05-CV-6253, 2010 WL 3075730, at *3 (W.D.N.Y. Aug. 5, 2010); Pyke v. Cuomo, 209 F.R.D. 33, 40 (N.D.N.Y. 2002) (McCurn, J.).  In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims."  See Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006)).

To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy.  <u>See</u> <u>Teamsters Local 445</u>, 546 F.3d at 201-02.  After overcoming that hurdle, the class must fit into one of the three Rule 23(b) subdivisions.  Each proposed subclass must independently meet the requirements of Rule 23.  <u>See</u> <u>Warren v. Xerox Corp.</u>, No. 01-CV-2909, 2004 WL 1562884, at *17 (E.D.N.Y. Jan. 26, 2004); <u>Burka v. N.Y.C. Transit Auth.</u>, 110 F.R.D. 595, 601 (S.D.N.Y. 1986).

### 2. <u>Proposed Subclasses</u>

Subclass I includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction even when the employees were not afforded a bona fide meal period of at least 30 minutes and who were therefore not paid for all compensable work time (the "Meal Break Deduction Class").  The violations that form the basis for this subclass are based on NYLL sections 190 and 191, which incorporate FLSA standards for determining whether time worked is compensable time.  Subclass II is comprised of all current and former hourly employees of defendants from November 13, 2002, to present who were suffered or permitted to perform work before or after their scheduled shift but were not paid for such work.  These violations are the result of defendants' rounding policy and alleged practice of permitting work before punching in and after punching out (the "Pre and Postliminary Work Class").  Subclass II is also based on violations of NYLL.  Subclass III includes all current and formerly hourly employees of defendants from November 13, 2002, to present subject to shift differential premium payments (the "Regular Rate Class") and is based on NYLL which incorporates

FLSA standards for determining whether an employee's overtime rate has been calculated upon the proper regular rate of pay.

Subclass IV is unique in that its existence rests in part on the survival of any of the above subclasses.  This subclass is made up of all current and former hourly employees covered by defendants' 401(k) retirement plan who were not properly credited for all hours worked and consequently suffered a reduction in retirement benefits (the "ERISA Class"). Subclass IV violations are premised on the fiduciary standards set out by ERISA.  To the extent that the class certification requirements are met for any of the above subclasses, the requirements will then be examined with respect to Subclass IV.

After consideration of defendants' opposition and newly presented evidence, plaintiff withdraws the certification motion as to claims involving impermissible rounding (part of Subclass II) and regular rate-shift differential claims (Subclass III).  Thus, only Subclasses I, II (relating to work before and after shifts), and IV need be discussed.

Under Rule 23(c), a court may divide a class into subclasses when all members of the class challenge the same conduct by a defendant but assert varying specific interests and legal theories.  See Fed. R. Civ. P. 23(c)(4)-(5); Warren, 2004 WL 1562884, at *17. Here, subclasses are appropriate because all members of the proposed class challenge defendants' policies as violative of the FLSA, NYLL, and ERISA, but the claims are based on four distinct alleged policies and not all proposed class members assert claims in each subclass.

### 3.  Rule 23(a) Requirements

The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, while it is not explicitly spelled out in Rule 23, courts have added an "implied requirement of ascertainability" with respect to the class definition. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006).

### a. **Numerosity**

The first requirement that plaintiff must prove under Rule 23(a) is that the prospective class is so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706 (1980). In the Second Circuit "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Defendants currently employ approximately 2,200 to 2,300 hourly employees. The majority of those employees are subject to the automatic meal break deduction policy.[11] Despite the application of the policy to this large group, defendants argue the low number of FLSA opt-in plaintiffs weighs against a finding that joinder is impracticable. See Thiebes v. Wal-Mart Stores, Inc., No. CIV. 98-802-KI, 2002 WL 479840, at *3 (D. Or. Jan. 9, 2002) (finding that small percentage of opt-in plaintiffs to FLSA collective action cautions against a finding that joinder is impracticable where only 2.7% of potential class members opted-in). Courts in the Second Circuit have rejected Thiebes and continue to assess numerosity

---

[11] As previously noted, not all hourly employees use the Kronos system. Neither party has provided an exact figure for the number of employees using Kronos. See supra, note 7.

based on the number of proposed class members rather than the number of opt-ins.  See Niemiec v. Ann Bendick Realty, No. 1:04-cv-00897, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) ("Thiebes is inapposite as there are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present."); see also Shabazz, 269 F.R.D. at 249 (finding numerosity based on 355 identified potential class members despite only 79 of that same group opting-in to FLSA collective action); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding same with several hundred potential class members and only three opt-ins because of employees' fear of reprisal in joining FLSA collective action); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D. Conn. 2002) (finding same with 281 potential class members and only 22 opt-ins).  Plaintiff has demonstrated numerosity for Subclass I by a preponderance of the evidence based on the approximately 2,200 to 2,300 current hourly employees, the majority of which are subject to the automatic meal break deduction.

With respect to Subclass II, plaintiff contends that based on the 2,200 to 2,300 hourly employees and the testimonial evidence concerning off the clock work, it is reasonable to infer that this subclass would be comprised of more than 40 employees.  Plaintiff submits the affidavit of only one employee who claims to have regularly performed work before and after her scheduled shift and was not paid for such work.  Solomon Decl., Ex. X ("Ruston Aff."), Dkt. No. 291-4.  Plaintiff also attaches the interrogatory responses of 18 opt-in plaintiffs who each state that they have worked before or after a shift without pay.  Solomon Decl., Ex. Y, Dkt. No. 291-4.  Defendants do not address numerosity with respect to this subclass. Plaintiff has not met her burden of establishing numerosity for Subclass II based solely on one affidavit and 18 interrogatory responses.  There is no uniform policy here applied to all

2,200 to 2,300 hourly employees like that applicable to Subclass I and plaintiff cannot draw

any reasonable inference from such sparse evidence.  Because plaintiff cannot show that

Subclass II is sufficiently numerous to warrant class certification, the remaining Rule 23

requirements need not be examined and plaintiff's motion for certification of Subclass II will

be denied.

### b.  Commonality and Typicality

The second and third requirements, commonality and typicality, tend to merge and

are generally examined together.  Commonality requires a showing that the prospective class

members share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  "It is not

necessary that all of the questions raised by arguments are identical; it is sufficient if a single

common issue is shared by the class."  Weiss v. La Suisse, Societe D 'Assurances Sur La

Vie, 226 F.R.D. 446, 449 (S.D.N.Y. 2005) (citing Robinson v. Metro-North Commuter R.R.

Co., 267 F.3d 147, 155 (2d Cir. 2001)).  Put another way, "Rule 23(a)(2) does not require the

plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that

the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the

named plaintiffs' claim as to that of the other members."  Weber v. Align Tech., Inc., No.

5:07-CV-0535, 2010 WL 2265418, at *4 (N.D.N.Y. June 2, 2010) (Suddaby, J.) (quoting

Dodge v. Cnty. of Orange, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)) (internal quotations omitted).

Typicality requires that claims or defenses of the representative parties are typical

of those of the prospective class.  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "if the

claims of the named plaintiffs arise from the same practice or course of conduct that gives

rise to the claims of the proposed class members."  Marisol A. v. Giuliani, 929 F.Supp. 662,

691 (S.D.N.Y.1996), aff'd, 126 F.3d 372 (2d Cir. 1997).  The claims of the named plaintiffs

however do not need to be identical with those of each class member.  Marriott v. Cnty. of

Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (Hurd, J.).

Plaintiff contends commonality and typicality are met because the claims of all

proposed class members derive from the same policies and are based on the same legal

theories.  Defendants first argue that because the proposed class would include over 241

different job titles, covering 145 different departments, and multiple facilities, the named

plaintiff's claims are not common with or typical of the proposed class.  They maintain that

because there is no common unlawful meal break policy – automatic meal break deductions

are not alone a violation of the FLSA and defendants' actual policy is to pay employees for

missed meal breaks – that plaintiff cannot satisfy commonality and typicality.

First, that the proposed class includes a variety of job titles is irrelevant in terms of

typicality and commonality.  Scholtisek v. Eldre Corp., 229 F.R.D. 381, 390 (W.D.N.Y. 2005)

(concluding that "similarly situated" is not based on job duties or type of work but rather

whether employees were allegedly subject to a common practice or scheme in violation of

the FLSA).  Here, it is not the automatic deduction policy alone that plaintiff claims is unlawful

but instead the manner in which it is implemented.  This gives rise to the common legal

questions of whether the policy for voiding the automatic deduction and the alleged failure to

ensure that breaks were taken constitute violations of the NYLL.  Accepting as true plaintiff's

allegations that defendants employ an automatic deduction policy applicable to most hourly

employees, yet delegate to department supervisors the task of overseeing the cancellations

raises the common question of whether this delegation is in compliance with the law.

Meyers' claim is typical of this subclass because she was an hourly employee subject to the

automatic meal break deduction but often worked during her meal breaks and was not compensated for that work.

Additionally, defendants' argument that class certification is inappropriate based on the varying number and frequency of missed meal breaks, how often the automatic deduction was cancelled, and whether supervisors discouraged employees from requesting payment for missed meal breaks is unpersuasive. That different employees suffered varying degrees of harm goes to damages, not liability. Likewise, the fact that only some supervisors, and not all, may have discouraged employees from requesting cancellation of the automatic deduction does not prevent class certification. Such inconsistencies in defendants' practices should not serve to punish plaintiff. Meyers has established commonality and typicality for Subclass I.

### c. Adequacy

The final requirement under Rule 23(a) is for the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A court must determine whether the named plaintiff's interests are antagonistic to the interests of other members of the class and whether counsel for the prospective class is qualified, experienced, and generally able to conduct the litigation. Brown v. Kelly, 609 F.3d 467, 479 (2d Cir. 2010); Hilton v. Wright, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (Hurd, J.). Plaintiff maintains there are no other pending actions alleging the same or similar causes of actions against these defendants and the class members' claims are similar so no conflict of interest will arise. She also provides evidence of proposed counsel's qualifications. Defendants dispute the named plaintiff's adequacy based on her "cookie cutter affirmation" and take issue with counsel's failure to produce plaintiff for a scheduled deposition .

The affirmation submitted by Meyers in support of this motion is identical to that submitted with plaintiff's motion for a collective action under the FLSA, made on November 18, 2008.  See Dkt. No. 46.  In fact, the current affirmation is dated September 29, 2008.  As Magistrate Judge Peebles noted in his decision preliminarily certifying the FLSA collective action, that affirmation revealed little about Meyers or her claims.  See Jan. 26, 2009, Decision & Order, Dkt. No. 170, 4.  Despite this, the affirmation does demonstrate that Meyers has sufficient knowledge concerning the meal break deduction claims.  Further, no class members have interests antagonistic to one another and all proposed members of Subclass I share a common interest in establishing that defendants violated NYLL.

The attorneys seeking to represent the class have established they are qualified and able to conduct this litigation.  Their experience is more fully discussed below pursuant to Rule 23(g).  Based on the minute entry of the discovery conference held on March 23, 2010, before Magistrate Judge Peebles, scheduled depositions were cancelled and all depositions were put on hold until paper discovery is completed and pending the instant motion for certification.  Accordingly, plaintiff has demonstrated that she can adequately represent the interests of the proposed class.

### d.  Ascertainability

Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified.  See, e.g., Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003).  Class members do not actually need to be ascertained before certification, but a court must determine that the class will be ascertainable at some stage of the proceedings.  Noble, 224 F.R.D. at 338.  Ascertainability is usually found where

membership in the class can be identified by "reference to objective criteria." Spagnola v.

Chubb Corp., 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

Defendants argue the proposed class definition is defective because an employee

is a member of the proposed meal break class only if they worked through a meal break

without being paid. Therefore the court would be required to make a merits determination for

each potential class member to determine whether they should be in the class. In support of

this argument, defendants cite De La Cruz v. Gill Corn Farms, Inc., No. 03-CV-1133, 2005

WL 5419056, at *6-7 (N.D.N.Y. Jan. 25, 2005) (McAvoy, J.). In De La Cruz, the plaintiffs

were employed by defendants as corn packers and claimed they worked in excess of forty

hours per week but were not paid overtime wages at a rate of one and one half times their

regular rate. On plaintiffs' class certification motion, the court noted that resolution of the

overtime issue turned on whether the work performed by plaintiffs fell within the FLSA's

overtime exemption for farming. The proposed class included employees "who did not work

in agriculture or secondary agriculture as defined by the FLSA." Id. at *1. The court took

issue with this definition because whether the workers, who regularly packed corn, were

engaged in agriculture or secondary agriculture within the meaning of the FLSA was a legal

determination and made the class definition unworkable. The court noted that the proposed

definition "begs the very legal question at issue in this case" because the definition depended

on a legal determination that had not yet been made. Id. at *6. Until such a legal

determination could be made, the court concluded it would be impossible to manage that

subclass. Plaintiffs' revised class definition however, which included "all employees of

Defendants who packed produce at Gill Corn Farms, Inc. between September 15, 1997 and

September 15, 2003" was "more workable because it is fact-based."  Id.  The De La Cruz

Court later went on to deny class certification on other grounds.

De La Cruz is distinguishable in that the class definition proposed by the plaintiff

here does not beg a legal determination.  Subclass I is comprised of all current and formerly

hourly employees of defendants from November 13, 2002, to present whose pay was subject

to an automatic 30 minute deduction even when the employees were not afforded a bona

fide meal period of at least 30 minutes and who were therefore not paid for all compensable

work time.  The legal determination lies in whether defendants' automatic deduction policy

and the manner in which it is implemented is in compliance with NYLL and the FLSA.

Whether a proposed class member fits into the class is a factual question.  The proposed

class definition calls for factual inquiries as to whether an individual hourly employee worked

through a meal period without pay.  Any problem presented by such factual inquiries is more

appropriately addressed when analyzing whether common questions predominate over

individual questions under Rule 23(b)(3).

Plaintiff has met the prerequisites of Rule 23(a) with respect to Subclass I.

Consideration of the requirements of Rules 23(b)(3), 23(b)(2) and 23(b)(1) will be

determinative of the motion.

### 4.  Rule 23(b) Requirements

In addition to showing that the proposed class satisfies the four prerequisites of

Rule 23(a), plaintiff must show that the class is "maintainable" under Rule 23(b).  A class

satisfies this requirement if it fits into one of the three alternative categories delineated by

Rule 23(b).  Plaintiff argues class certification is proper under any of the Rule 23(b)

subdivisions.

### a. **Rule 23(b)(3)**

Under Rule 23(b)(3), class certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and the court finds that class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff maintains certification is proper under Rule 23(b)(3) because the common question of whether defendants employ policies permitting hourly employees to work without compensation applies to all members of the class. She contends the answer to that question determines liability and can be established through generalized common proof showing defendants did not sufficiently ensure that employees were being paid for time worked during meal breaks. She further argues that any individualized inquiries relate to damages, not liability, and resolution of those issues are manageable. Defendants insist individualized questions of fact predominate over common issues because individualized inquiries would need to be made into whether each plaintiff worked through a meal break without pay to determine whether they belong in the class.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers, 624 F.3d at 547 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997)). Predominance is required to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Myers, 624 F.3d at 547 (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted)). Common

questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

To determine whether a class action is the superior method of resolving the claims at issue, a court must consider Rule 23(b)(3)'s four factors. Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164, 94 S. Ct. 2140, 2146 (1974).

Plaintiff has made a sufficient showing that legal and factual questions relating to each class member's case in Subclass I can be achieved through class wide proof. Factual questions regarding whether hourly employees worked through meal breaks without compensation may possibly be answered with the testimony of a representative sample of employees. See e.g., Grochowski v. Phoenix Constr., 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages."). The legal question common to the entire class is whether defendants' automatic meal break deduction policy is in compliance with the law. This includes, inter alia, whether defendants knew that employees performed work during their meal periods and if they did not know, whether they should have known; whether defendants prevented employees from performing

work they did not want to pay for; whether they ensured meal breaks were actually taken; whether if the break was not taken, records were updated to reflect time worked; whether the policy requiring employees submit a form to cancel the automatic deduction impermissibly shifts the burden to record time from the employer to the employee; and whether employees were properly trained regarding the cancellation policy.

Individual class members have little need to control the prosecution of their claims separately.  Further, the costs of maintaining separate actions would be prohibitive for potential class members and obtaining individual counsel may be difficult because of the relatively low individual damages.  Neither party has advised of any pending litigation concerning the subject matter of the proposed class action.  This forum is desirable for the parties as defendants' facilities, and most, if not all, of the proposed class members reside in the Northern District of New York.

Defendants contend a class action is not manageable because of the factual differences presented by individual plaintiffs claiming differing amounts in damages.  They argue that a class action would result in hundreds of mini-trials because each class member must present individualized proof regarding when they worked through a meal break without compensation.  This argument is unpersuasive.  Considering the numbers alone, it is evident that a class action is superior to the adjudication of dozens, or hundreds, of separate actions. Admittedly, whether a particular class member worked through a meal period without compensation may be subject to individualized proof.  Plaintiff argues resolution of whether a class member worked through a meal break without compensation may be achieved by representative testimony.  Whether that is permissible need not be decided at this point. Issues of individual damages arise in any class action based on unpaid wages and

individualized inquiries will need to be made in the FLSA collective action which has already been preliminarily certified.  See e.g., Shabazz, 269 F.R.D. at 250-51.  The existence of individualized claims for damages, alone, is not a barrier to class certification on grounds of manageability.  Many of the remaining manageability arguments pertain to the hybrid nature of this lawsuit because it involves both FLSA and NYLL claims, and would simultaneously utilize both opt-in and opt-out procedures.[12]  These arguments are addressed in more detail below in the context of supplemental jurisdiction.

After considering all the relevant factors, plaintiff has met her burden of demonstrating that common questions predominate over individual issues in Subclass I and a class action is the superior method of resolving the claims.  The state law claims clearly arise out of the same nucleus of operative facts as the FLSA claims, which are going to be adjudicated in this court in any event.  Therefore plaintiff's motion for class certification of Subclass I will be granted pursuant to Rule 23(b)(3).

### b.  Rule 23(b)(2)

Alternatively, plaintiff argues that the class may be certified under Rule 23(b)(2). This division permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A class will be certified if "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."  Robinson, 267 F.3d at 162.

---

[12] Defendants cite De La Cruz to argue that overlap of a FLSA collective action and a Rule 23 class action based on NYLL claims is unmanageable.  2005 WL 5419056, at *6-7. The De La Cruz Court discussed the difficulty in managing such a suit under Rule 23(b)(3)(D).

Legal opinions, law review articles, and other publications have discussed the extent to which, if at all, money damages may be sought in a Rule 23(b)(2) class action.  Id. at 163 n.8.  Prior to the Second Circuit's decision in <u>Robinson</u>, many district courts only permitted certification of Rule 23(b)(2) class actions seeking money damages where the request for monetary relief was incidental to the requested injunctive relief.  Id. at 163; <u>see also</u> <u>Robinson v. Metro-North Commuter R.R. Co.</u>, 197 F.R.D. 85, 87-88 (S.D.N.Y. 2000) ("<u>Robinson II</u>") ("[T]he inherently individualized nature of the determination of damages . . . render[s] it predominant, and thereby make[s] class action status under Rule 23(b)(2) inappropriate, except in those rare incidences in which the request for monetary relief [is] wholly 'incidental' to the requested injunctive relief.") <u>vacated</u>, <u>Robinson</u>, 267 F.3d 147.  On appeal from <u>Robinson II</u>, the Second Circuit in <u>Robinson</u> noted that "limiting (b)(2) certification to claims involving no more than incidental damages . . . forecloses (b)(2) class certification of all claims that include compensatory damages . . . even if the class-wide injunctive relief is the 'form of relief in which the plaintiffs are primarily interested.'"  <u>Robinson</u>, 267 F.3d at 163.  The Second Circuit rejected the lower court's bright-line rule and held that when determining certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court

> should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

<u>Id</u>. at 164; <u>see also</u> <u>Parker v. Time Warner Entm't Co.</u>, 331 F.3d 13, 20 (2d Cir. 2003).

Plaintiff contends the primary goal of this lawsuit is to restrain defendants' unlawful conduct and that she would bring the suit to enjoin defendants even in the absence of monetary recovery.  This argument is unpersuasive.  Plaintiff has not presented evidence that she would do so were it not possible to recover the claimed lost wages and, for the ERISA subclass, credit for all hours worked.  Plaintiff may be suing to end defendants' allegedly unlawful practices but the compensation she seeks can hardly be coined as incidental.  While liability might be determined on a class wide basis, the issue of damages would most certainly "vary based on the subjective considerations of each class members' claims."  Robinson, 267 F.3d at 165.  As previously discussed in the Rule 23(b)(3) analysis, individualized inquiries would likely need to be conducted regarding whether each employee worked through a meal break without compensation to determine damages.  These damages are in contrast to incidental damages which "flow[ ] directly from a finding of liability on the . . . claims for class-wide injunctive and declaratory relief."  Id.  Even though certification of a class involving non-incidental monetary claims may be permitted under Rule 23(b)(2), the facts here do not warrant it for Subclass I.

### c.  Rule 23(b)(1)

Finally, plaintiff contends that certification is also proper under Rule 23(b)(1).  Rule 23(b)(1)(A) authorizes a class action if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  Alternatively, Rule 23(b)(1)(B) permits class certification where

> prosecuting separate actions by or against individual class members
> would create a risk of . . . adjudications with respect to individual class
> members, that, as a practical matter, would be dispositive of the interests
> of the other members not parties to the individual adjudications or would
> substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). Certification under the second prong of Rule 23(b)(1) often

occurs when the putative class members' only source of recovery comes from a limited fund.

See e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815, 834-38, 119 S. Ct. 2295, 2309 (1999).

The parties do not distinguish between Rule 23(b)(1)'s two subsections. Plaintiff

states that individual adjudications could result in different conclusions regarding whether

defendants' policies violate the law and would establish incompatible standards for

defendants. Defendants contend there is no real risk of multiple actions because no

employees complained of the practices before this lawsuit began. They are also certain that

individual lawsuits would not result since "[i]n the time since this action has been

commenced, no individual actions have been filed." Defs.' Mem. of Law in Opp'n, Dkt. No.

310, 31.

The risk of inconsistent adjudications is low because defendants, and presumably

most if not all of its employees, are situated within the Northern District of New York and all

related cases would likely be assigned to the same Judge. Further, while defendants'

speculation that no individual action will be brought simply because none have been

commenced thus far is less than convincing, plaintiff had failed to sustain her burden to

demonstrate that the risk of multiple actions is real and not hypothetical. Accordingly, class

certification of Subclass I is not appropriate under Rule 23(b)(1).

### 5. **Supplemental Jurisdiction**

Defendants argue supplemental jurisdiction should not be exercised over the NYLL claims. They contend a hybrid action with both an opt-in FLSA collective action and an opt-out NYLL class is inherently confusing. See De La Cruz, 2005 WL 5419056, at *6. They also argue that the opt-out scheme for the NYLL claims thwarts congressional intent to use an opt-in scheme for FLSA claims and that the state law claims threaten to overwhelm the FLSA claims . See id. at *7. Plaintiff maintains that a Rule 23 action and FLSA collective action are compatible and that supplemental jurisdiction should be freely exercised over concurrent state law wage and hour actions.

A federal court may decline to exercise supplemental jurisdiction where a state law claim "substantially predominates" over federal claims. 28 U.S.C. § 1367(c)(2); see Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 425 & n.12 (D.C. Cir. 2006). "[T]he decision to decline supplemental jurisdiction should be guided by an assessment of 'judicial economy, convenience, fairness, and comity.'" Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162 (S.D.N.Y. 2008) (quoting Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006)). Like in Damassia, none of the above mentioned factors counsel against exercising supplemental jurisdiction here. The underlying factual bases for the federal and state claims are identical in this case. The claims are based on the same allegedly unlawful policies, applied in the same uniform manner to hourly employees. It would be neither convenient nor economical to relitigate these policies in state court. Similarly, fairness weighs in favor of exercising supplemental jurisdiction when taking into account the possible fear of reprisal and other reasons why an employee may not opt-in to a FLSA collective action. Lastly, comity is

no hurdle to supplemental jurisdiction as NYLL largely parallels the FLSA particularly with respect to the violations alleged in this matter.

Four circuits have considered the propriety of a district court's exercise of supplemental jurisdiction over state law wage and hour claims that are supplemental to a FLSA collective action.  See Ervin v. OS Rest. Servs., Inc., --- F.3d ----, 2011 WL 135708, at *1 (7th Cir. 2011) ("Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding."); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) (following the District of Columbia Circuit and finding the exercise of supplemental jurisdiction over state law claims proper because no novel questions of state law were present and state and federal claims were factually similar); Lindsay, 448 F.3d at 425 (concluding, in the context of an appeal under Rule 23(f), that the FLSA does not necessarily preclude an exercise of supplemental jurisdiction over related state law claims); De Asencio v. Tyson Foods., Inc., 342 F.3d 301, 312 (3d Cir. 2003) (determining that district court presiding over FLSA collective action erroneously exercised supplemental jurisdiction over state law Rule 23 claims).

Of the four circuits that have authored opinions on the issue, three have permitted simultaneous Rule 23 and FLSA section 216(b) actions.  The Third Circuit's decision in De Asencio  finding the two actions incompatible is distinguishable from the facts here.  In concluding that the district court improperly abused its discretion by exercising supplemental jurisdiction over a state law wage class action, the De Ascencio Court considered the novel issues of state law involved which would have required a more intensive factual inquiry than

that needed for the FLSA claim.  342 F.3d at 311.  As previously discussed, the NYLL

violations alleged by plaintiffs here stem from the same policies and practices of defendants,

and NYLL largely parallels the FLSA.  Thus no novel issues of state law exist to deter the

exercise of supplemental jurisdiction.

Further, district courts in the Second Circuit routinely allow hybrid wage and hour

suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions.  See e.g.,

Duchene v. Michael L. Cetta, Inc., 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("[C]ourts in the

Second Circuit routinely certify class action[s] in FLSA matters so that New York State and

federal wage and hour claims are considered together."); see also Damassia, 250 F.R.D. at

164 (permitting hybrid action based on the overwhelming precedent in the Second Circuit

supporting certification of simultaneous NYLL class actions and FLSA collective actions);

Guzman v. VLM, Inc., No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008)

("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA

actions."); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 374-75 (S.D.N.Y. 2007)

(rejecting defendant's contention that supplemental jurisdiction should not be exercised over

NYLL claims in a simultaneous FLSA collective action and Rule 23 NYLL suit); Brickey v.

Dolencorp, Inc., 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are

routinely prosecuted together . . . .").

Nor does De La Cruz compel a different result.  In De La Cruz, Judge McAvoy

noted that "a notice that calls both for a decision to opt-in to a collective action and also

whether to opt-out of the class action . . . seems [to be] an inherently difficult task to [do] . . .

in a non-confusing manner."  2005 WL 5419056, at *6 (quoting De La Fuente v. FPM Ipsen

Heat Treating, Inc., 2002 WL 31819226, at *2 (N.D. Ill. 2002)).  While confusion is a

legitimate concern, the proposed class members in De La Cruz consisted of migrant farm workers, many of whom did not speak English and likely had very little understanding of the United States' legal system.[13]  2005 WL 5419056, at *6.  There is no indication that any of the proposed class members in this case would face those added obstacles.  Any potential confusion may be alleviated by carefully drafted notices and "any confusion that the dual notices may cause" does not "significantly undermine the superiority of a class action." Guzman, 2008 WL 597186 at *8.  Lastly, congressional intent would not be thwarted by permitting simultaneous FLSA opt-in and Rule 23 out-out actions.  See Damassia, 250 F.R.D. at 162 ("[I]t is not correct that allowing a class action under these circumstances would 'nullify Congress's intent.'").  Contra De La Cruz, 2005 WL 5419056, at *7.  The Damassia Court noted that section 216(b) applies only to FLSA wage claims, and Congress has not voiced its intent with respect to wage claims generally.  250 F.R.D. at 162.

Finally, the proposed NYLL class would not overwhelm the FLSA collective action as defendants contend.  See De La Cruz, 2005 WL 5419056, at *7 (denying certification because state law claims predominated based in part on the "sheer numbers" where no members had yet opted-in to the FLSA action).  Whether state law claims predominate over federal claims relates to the type of the claim, not the number of potential class members. Damassia, 250 F.R.D. at 162 (citing Lindsay, 448 F.3d at 425)).  The type of state law claims

---

[13]  The court also found the confusion would be exacerbated by New York Civil Practice Law and Rule ("CPLR") section 901(b), "which would require persons opting out of the state law class action to waive liquidated damages available under the Labor Law."  De La Cruz, 2005 WL 5419056, at *6.  This concern is no longer applicable as the Supreme Court has held that CPLR section 901(b) does not apply to Rule 23 class actions and that liquidated damages available under New York law may be pursued in a federal class action.  Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. ---,130 S. Ct. 1431, 1443-44 (2010).

here derive from the same set of facts relevant to the FLSA claims and thus the state law claims would not predominate over the federal claims.

Certification of the NYLL class alongside the conditionally certified section 216(b) FLSA collective action is appropriate in light of precedent in the Second, Seventh, Ninth, and District of Columbia Circuits supporting certification of simultaneous state labor law class actions and FLSA collective actions.

### 6. Subclass IV

As previously discussed, for the ERISA subclass to be certified, one of the other subclasses must first be certified because it is premised on the underlying NYLL and FLSA violations. Subclass IV then must independently meet the Rule 23 requirements. To clarify, after an analysis of the Rule 23 requirements, Subclass I will be certified and Subclass II will not.

Plaintiff has not presented any evidence regarding defendants' retirement plan or the ERISA subclass despite an opportunity to do so. The parties were permitted to engage in limited discovery relating to plaintiff's instant motion for class certification but the record is devoid of any evidence relating to the ERISA subclass. It is unclear how many potential class members participated in the retirement plan at issue. Even though numerosity is met for Subclass I, we are left guessing whether all of those employees, none, or a number in between participated in defendants' retirement plan. According to defendants, named plaintiff Meyers never participated in the Crouse Hospital 401(k) Retirement Plan. See Bergemann Decl., ¶ 19. Only two of the opt-in plaintiffs in the FLSA collective action, Shirleen Bennett and Patricia Casullo, participated in this plan. Id. Defendants attached a copy of that plan which provides that employees governed by the terms of a collective

bargaining agreement are not eligible to participate in the plan.  Bergemann Decl., Ex. I, Dkt. No. 310-3.  According to defendants, Meyers, and most of the opt-in plaintiffs, are or were "represented" employees and thus not eligible to participate in the plan.[14]  Defendants also operate the Retirement Plan of Crouse Hospital, which is a defined benefit plan.  Bergemann Decl., Ex. J, Dkt. No. 310-4.  To be eligible to participate in that plan, an employee must complete 1000 hours of service in any year at Crouse Hospital.  Bergemann Decl., ¶ 21.  Defendants acknowledge that some opt-in plaintiffs are participants in this plan, but Meyers was not.  Id.

The characteristics of the FLSA collective action opt-ins are certainly not dispositive of the NYLL subclasses, as explained above with respect to numerosity.  However, plaintiff has failed to state which, if either, retirement plan forms the basis for Subclass IV.  Nor does Meyers include information regarding who this subclass would be comprised of.  Based on the lack of evidence provided by plaintiff, considered with that offered by defendants in opposition, Meyers cannot satisfy the Rule 23 requirements for Subclass IV and class certification will be denied.

### 7.  Appointment of Class Counsel under Rule 23(g)

Plaintiffs' attorneys have petitioned to be appointed class counsel pursuant to Rule 23(g).  To be appointed, counsel "must fairly and adequately represent the interests of the class" and meet the requirements of Rule 23(g)(1)(B) and (C), which state, inter alia, that a court must consider (1) "the work counsel has done in identifying or investigating potential

---

[14] Approximately 2,000 of the 2,200 to 2,300 hourly employees are covered by Crouse Hospital's collective bargaining agreement (the "Agreement") with 1199SEIU, United Healthcare Workers East. Bergemann Decl., ¶ 3.  The Agreement covers employees in three different bargaining units, including a Registered Nurse unit; a Licensed Practical Nurse and Tech unit; and a Service, Maintenance, and Clerical unit.  Thus approximately 2,000 hourly employees are "represented."

claims in the action"; (2) "counsel's experience in handling class actions, other complex

litigation, and claims of the type asserted in the action"; (3) "counsel's knowledge of the

applicable law"; and (4) "the resources counsel will commit to representing the class."  Fed.

R. Civ. P. 23(g)(1)(B)-(C).

Thomas & Solomon LLP has investigated the claims in this case and has

represented the plaintiffs since the start of this litigation over two years ago.  Their focus as a

law firm is on employment law, and in particular, wage and hour class actions.  They are

currently handling a number of wage and hour class actions throughout the country and have

represented plaintiffs in complex employment litigation in the past.  Plaintiffs' submissions

emphasize firm partner and counsel on this case Patrick J. Solomon's qualifications,

including his participation on various committees relating to employment and labor law and

his experience as a speaker on these topics.  Lastly, Thomas & Solomon vows to litigate this

case to conclusion and dedicate the resources necessary to achieve a successful outcome

for class members.  After consideration of the requirements of Rule 23(g), given their

experience and expertise in this area of law, plaintiffs' counsel will be appointed as class

counsel.

## IV.  <u>CONCLUSION</u>

Defendants' motion for partial summary judgment dismissing seven opt-in plaintiffs

from the FLSA collective action will be granted because the disputed plaintiffs do not qualify

under the January 26, 2009, conditional certification order.  The disputed plaintiffs admitted

in their interrogatory responses that they did not work through or during a meal break without

compensation and thus they fall outside the conditionally certified FLSA class.

Plaintiff's motion for certification of <u>Subclass I</u>, the Meal Break Deduction Class, will

be granted because Meyers has satisfied the Rule 23(a) requirements by a preponderance of the evidence. She has also demonstrated that certification is appropriate under Rule 23(b)(3) because questions common to the class predominate over individual questions and class litigation is a superior method of adjudicating these claims.

Plaintiff's motion for certification of Subclass II, the Pre and Postliminary Work Class, will be denied. Plaintiff cannot satisfy the first Rule 23(a) prerequisite of numerosity based solely on one affidavit and 18 interrogatory responses. Certification of Subclass IV, the ERISA Class, will likewise be denied because plaintiff is not a participant in either retirement plan acknowledged by defendants and has offered little to no evidence to satisfy the Rule 23 requirements.

Finally, Thomas & Solomon LLP will be appointed class counsel for Subclass I pursuant to Rule 23(g) based on their experience in this area of law and their commitment to litigate this class action to completion.

Therefore, it is

ORDERED that

1. Defendants' motion for partial summary judgment dismissing the seven disputed opt-in plaintiffs who failed to assert in the court approved interrogatories that they worked without pay during a meal break is GRANTED;

2. The following plaintiffs are DISMISSED from the Fair Labor Standards Act collective action:

Shirleen Bennett, Kristin Brown, MaryBeth Byrne, Michelle DiMatteo, Karen Gibbs, Kim Phillips, and Sharlon Simmons;

3.  Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23 is GRANTED in part and DENIED in part as follows:

(1) Class certification is GRANTED as to Subclass I, the "Meal Break Deduction Class," and includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction but were not afforded a bona fide meal period of at least 30 minutes;

(2) Class certification is DENIED as to Subclass II, the "Pre and Postliminary Work Class";

(3) Class certification is DENIED as moot as to Subclass III, the "Regular Rate Class"; and

(4) Class certification is DENIED as to Subclass IV, the "ERISA Class";

4.  Thomas & Solomon LLP is appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g); and

5.  The matter is referred back to Magistrate Judge David Peebles for further pre-trial proceedings.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 8, 2011
      Utica, New York.